O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHADANA L. JONES,                    )      CASE NO. CV 12-07017 RZ
                                     )
                    Plaintiff,       )
                                     )      MEMORANDUM OPINION
        vs.                          )      AND ORDER
                                     )
CAROLYN W. COLVIN, Acting            )
Commissioner of the Social Security, )
                                     )
                    Defendant.       )
                                     )

        The regulations governing Social Security disability claims contain a "Listing of Impairments," specifying the characteristics of certain disabling impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1.  In *Lester v. Chater*, 81 F.3d 821 (9th Cir. 1996), the Ninth Circuit ruled that

        Conditions contained in the "Listing of Impairments" are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs. 20 C.F.R. § 404.1520(d).  Claimants are conclusively disabled if their condition *either* meets or equals a listed impairment. 20 C.F.R. 404.1520(d).

*Id.* at 828 (emphasis in original).  The ruling does not offer any wiggle room; such conditions are "*irrebuttably* presumed" disabling and claimants are "*conclusively* disabled" when a listing is met.

One of the listings covers mental retardation and, as pertinent here, provides:

12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

.          .          .

B.  A valid verbal, performance, or full scale IQ of 59 or less;

.          .          .

The Administrative Law Judge here found that Plaintiff Shadana Jones took two IQ tests.  In the first, she obtained a full scale IQ of 43.  In the second, she obtained a full scale IQ of 46.  [AR 27]  Both of these tests were taken in 2010 [*id.*].  The Administrative Law Judge also found that Plaintiff was born in 1990 [AR 25], meaning that she was under the age of 22 when the IQ tests were administered.

Under both of these tests, Plaintiff would be conclusively presumed to be disabled according to Listing 12.05(B).  The regulations require, however, that a claimant have a *valid* IQ of 59 or less, and the Administrative Law Judge stated that the examining consultant found that the first test was not valid due to suboptimal performance. [AR 27]  Thus, the first test was not a basis for a determination that Plaintiff was disabled under Listing 12.05(B).

As the Administrative Law Judge noted, Plaintiff registered a score of 46 on the second IQ test.  The Administrative Law Judge did *not* find this score invalid, and he would not have been able to do so, given the statements of the consultant who administered the test.  Far from finding that Plaintiff had used a suboptimal effort, as the first examiner noted, the second examiner stated that Plaintiff remained cooperative and complied with assessment directives; that she tried her best but exerted much effort when completing tasks, and that she was noticeably overwhelmed and sometimes confused, "suggesting that she had difficulties understanding what was being asked of her."  [AR 856].  In short, the evidentiary record established that the IQ was valid, and accurately reflected Plaintiff's intelligence capability.

With a valid IQ score of 46, Plaintiff should have been determined to be disabled.  However, the Administrative Law Judge rejected this second score for two reasons.  First, he ruled that the assessment was made by a psychologist who evaluated the claimant on a single occasion.  Second, he ruled that the score was not consistent with the claimant's school records going back through 1999 or with her activities of daily living.  [AR 27]  It is not clear whether the Administrative Law Judge thought these were reasons that the IQ was not "valid" or that they were reasons that, even if valid, it was within his authority to reject the IQ score.  Neither reason justifies ignoring the plain language of the regulation.

As the Ninth Circuit has acknowledged in an unpublished case addressing Listing 12.05(C), that court "has never decided what information is appropriately looked to in deciding validity."  *Thresher v. Astrue*, 283 Fed. Appx. 473, 475 n.6 (9th Cir. 2008).  There certainly are times when factors external to the test could suggest the invalidity of an IQ score, as when a person had been sleep-deprived, had been drinking and had not eaten for two days, and the doctor administering the test thought that these factors influenced the score.  *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).  But it is equally true that the ability to perform past relevant work does not impeach the validity of an IQ test, *see Ambers v. Heckler*, 736 F.2d 1467 (11th Cir. 1984); this makes sense, since

a person who meets a Listing is deemed disabled without respect to whether he could perform his past relevant work. *Lester*, *supra*.

If mental retardation manifests itself prior to age 22, Listing 12.05(B) contains only one requirement: that the claimant have a valid IQ of 59 or less. In contrast, the next Listing, No. 12.05(C), has two requirements: a valid IQ of between 60 and 70, and a physical or mental impairment that imposes an additional and significant work-related limitation or function. With the higher level IQ and the additional requirement that function specifically be impaired, it is not surprising that some cases evaluating Listing 12.05(C) have looked to other parts of the record to determine the validity of the IQ scores, and found that a claimant's ability to function was inconsistent with the IQ scores. Most notable is *Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986) where, despite a qualifying IQ score, the claimant had a two-year college associate's degree, was enrolled in a third year of college, and previously had taught an algebra class. The present case, however, arises under Listing 12.05(B), and therefore looking to ability to function is not a proper basis for determining validity of the IQ score. Ability to function would not be a factor as part of 12.05(B) as it would under 12.05(C), and therefore it would be  determined *after* Step 3 in the evaluation process. The evaluation process is sequential; "[i]f we can find that you are disabled or not disabled at a step," the regulations instruct, "we make our determination or decision and we do not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

In this case, therefore, it was error to consider the factors identified by the Administrative Law Judge as factors justifying rejection of the IQ scores. In addition, however, the factors cannot support rejection of the scores even when those factors are examined on their merits.

The first reason that the Administrative Law Judge gave, that the score was made by a psychologist who evaluated Plaintiff on a single occasion, does not fit within the regulation. The regulation does not say that a claimant need show *repeatedly* that she has an IQ of less than 59. The very idea of a valid test is that it measures what it is supposed to measure, *see e.g.*, 20 C.F.R. Part 404, Subpart P, Appendix 1 at 12.00(b)(5)

("validity [means] the test measures what it is supposed to measure").   A person's IQ should not change from test to test. *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (absent evidence of sudden trauma that can cause retardation, IQ tests create a rebuttable presumption of a fairly constant IQ throughout life).   Thus, the fact that the psychologist only examined Plaintiff once is not a basis for rejecting the IQ score.

Although the Court could not locate a Ninth Circuit decision addressing whether an administrative law judge may reject an IQ score because it was a one-time test by a consultant, there are cases in other circuits which state that this is a proper basis for rejecting an IQ score.  One example is *Clark v. Apfel*, 141 F.3d 1253 (8th Cir. 1998). *Clark* provided no rationale for this statement, but cited to *Loving v. Department of Health and Human Services*, 16 F.3d 967, 971 (8th Cir. 1994).   *Loving* in turn relied on *Browning v. Sullivan*, 958 F.2d 817 (8th Cir. 1992), which was not a case about IQ scores at all, but rather a case about depression; in such a case, it is not at all surprising that a Court would say that a one-time opinion from a consultant is not automatically determinative.  Indeed, that is the law within the Ninth Circuit also. *Sprague v. Bowen* 812 F.2d 1226, 1230 (9th Cir. 1987); 20 C.F.R. § 404.1527(d)(2) (treating physician's opinion given greater credence than examining physician's opinion, because, unlike one-time examination, it is based on in-depth view and observation over time).  But the rationale that an *opinion* is not as persuasive based on a single evaluation as it is when based on longitudinal observation does not translate to a metric like an IQ test,  and certainly the regulations do not provide for the discrediting of an IQ score on the basis that it was the product of a one-time test. The Court thus finds that this first reason was not a sufficient reason for rejecting the IQ result.

The second reason the Administrative Law Judge provided was quite amorphous.   "Most significantly," he stated, the score "is not consistent with the information provided in the claimant's school records dating back through 1999 (Exhibits 1F; 2F; 3F; 4F; 5F) or with the claimant's activities of daily living discussed more

thoroughly below in Finding #5."  [AR 27]  This statement cannot stand as substantial evidence to invalidate the IQ score.

Although the Administrative Law Judge cited Exhibits 1F-5F as Plaintiff's school records, he identified only two pieces of evidence within those exhibits when he later discussed Plaintiff's "alleged learning disability and psychosis." He stated that "while in the seventh grade, she was able to read a ninth grade level passage with 98 percent accuracy," and that "[s]imilarly, her ninth grade math teacher recommended she take more advanced algebra because she exhibited math ability and should be challenged." [AR 29, citing AR 402 and AR 363]  The "98 percent accuracy" figure, however, did not refer to *comprehension*.  The record actually states:

> **Reading**: Word recognition skills have improved from the 77%ile to the 93%ile.  Shadana is able to read a 9th grade level passage with 98% accuracy.  Comprehension skills remain her greatest reading challenge.  She needs assistance in discerning main ideas and finding information.

Far from indicating that Plaintiff, in the seventh grade, was able to read at a ninth grade level, the record in fact indicates that Plaintiff had trouble, in seventh grade, comprehending what she read.  She could recognize the words and read them accurately, but she could not comprehend, and this piece of evidence therefore does not gainsay the significant deficit flagged by the IQ score.  Similarly, the reference to the math teacher's recommendation in Plaintiff's 2006 IEP that Plaintiff "take more advanced algebra as she exhibits math ability and should be challenged," [AR 363] must be considered with the other evidence in the record; in Ninth Grade, Plaintiff received a D minus in algebra first semester and a D second semester (which certainly belies the notion of math ability as a ninth-grader), and in Tenth Grade she received an F first semester in math and a D second semester. [AR 884] Plaintiff's cumulative grade point average upon graduation was 1.566.

[*Id.*].  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)*,* quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006), and *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

The "activities of daily living" which the Administrative Law Judge "discussed more thoroughly" in Finding # 5 were:  Plaintiff was generally able to care for her personal needs, albeit slowly, with reminders and sometimes with assistance; she could make her own sandwiches, make her bed, take out the trash, and perform all basic household chores unassisted; she could spend time with others, talking and watching television, and regularly go to church and her mother's house; and she could read books and magazines and watch movies.  [AR 30]  The Administrative Law Judge did not explain, nor does the Court see any way, in which these activities have anything to do with Plaintiff's intelligence, which is the determining factor in the listing for mental retardation under Listing 12.05(B).

Even when considering the factors that the Administrative Law Judge noted, therefore, substantial evidence does not support the determination that the second IQ test should have been rejected.  Plaintiff met the requirements of Listing 12.05(B):  she had mental retardation prior to age 22, and a qualifying severity level  because she had a valid IQ of 59 or less.  As provided in *Lester*, she conclusively is presumed disabled.  The Court accordingly need not address other arguments as to why the Commissioner's decision was wrong.

The Commissioner's decision is reversed, and the matter is remanded for the awarding of benefits.

IT IS SO ORDERED.

DATED:  June 26, 2013

RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE